UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| ROXANNE L. SLAUGH, an individual, in her capacity as Successor Trustee of the Neidigh Trust, dated April 21, 2010 and amended June 10, 2015,<br><br>Plaintiff,<br><br>vs.<br><br>MARIANNE POSELEY WAGNER MARRQUARDT NEIDIGH,<br><br>Defendant. | Case No.: 2:15-cv-00555-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**DEFENDANT'S MOTION FOR ENFORCEMENT OF JUDGMENT AND SANCTIONS**<br><br>**(Docket No. 98)**<br><br>**PLAINTIFF'S CROSS-MOTION FOR ENFORCEMENT OF JUDGMENT AND SANCTIONS**<br><br>**(Docket No. 107)** |

Now pending before the Court are (1) Defendant's Motion for Enforcement of Judgment and Sanctions (Docket No. 98), and (2) Plaintiff's Cross-Motion for Enforcement of Judgment and Sanctions (Docket No. 107). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:[1]

## BACKGROUND

Unfortunately, the latest round of briefing confirms that the parties' ability to work cooperatively toward bringing this case to a close remains an elusive, and regrettable, failure. Counsel for the parties continue in an acrimonious relationship, marked in part by at-times toxic

---

[1] The Court understands that an appeal hearing relating to the probate case filed in state court (identified as Case No. CV-2015-7802) is currently set for July 10, 2018. With this in mind, this Memorandum Decision and Order attempts to address the parties' arguments as efficiently (but completely) as possible.

**MEMORANDUM DECISION AND ORDER - 1**

and disparaging written correspondence lobbed back and forth. Hence, in a case in which each side needs to have the benefit of cooperation in order to serve the best interests of the clients, the case instead slogs on, with the parties incapable of satisfying the Court's February 18, 2018 Judgment. Most recently, each party has filed a motion to enforce the Judgment, while simultaneously seeking sanctions for the other's conduct alleged to have either interfered with actions that the Court previously ordered be taken, or by failing to take such actions. And, in doing so, each side claims the high ground.

More than a year ago, this case settled in a settlement conference with Magistrate Judge Candy W. Dale. Yet, unlike nearly every other such case that goes through a settlement conference resulting in a settlement, the parties did not complete their settlement, and the history of the case before this Court continued. As part of that continuing saga, the Defendant moved to enforce the settlement agreement consistent with her understanding of the settlement's terms. Plaintiff stridently opposed the motion, but on September 28, 2017, the Court granted, in part, and denied, in part, Defendant's motion, ordering:

> A settlement agreement exists between the parties and Plaintiff is to be paid $136,000, with the IBEW retirement and Fidelity accounts being applied toward that amount. In this respect, the Motion is GRANTED. To the extent Defendant requests that Plaintiff either take less than $136,000 and/or be ordered to account for any taxable events related to any distributions from these accounts, that request is rejected. In this respect, the Motion is DENIED.

9/28/17 MDO, p. 11 (Docket No. 78). Four days later, Defendant requested clarification of the Court's September 28, 2017 Order, which Plaintiff again opposed.[2] On November 30, 2017, the Court granted, in part, and denied, in part, Defendant's request, ordering:

> A settlement agreement exists between the parties and Plaintiff is to be paid $136,000, with the IBEW retirement and Fidelity accounts being applied toward

---

[2] Each party also submitted for the Court's consideration their own proposed judgments, that aligned with their respective understanding of the settlement agreement's terms and concurrent obligations. *See, e.g.*, (Docket Nos. 79-8, 84-1, 85-2).

**MEMORANDUM DECISION AND ORDER - 2**

that amount. Plaintiff is to receive $136,000 after any withholding. In this respect, Defendant's Request is DENIED.

The El Dorado account belongs to Defendant, with Defendant being entitled to its balance as of May 3, 2017. Additionally, all rent proceeds collected from the properties that Defendant is understood to own following the May 3, 2017 settlement agreement (less any management fees incurred) belong to Defendant. In these respects, Defendant's Request is GRANTED.

11/30/17 Order, pp. 4-5 (Docket No. 86).

On February 28, 2018, the Court issued a Judgment enforcing the settlement that had been reached between the parties, taking into account the parties' proposed judgments along with the above-referenced Orders. In relevant part, the Judgment fully and finally resolved all claims asserted between the parties in four different legal actions (including this proceeding), and incorporated the following terms:

1. Plaintiff shall receive the sum of $136,000.00, funded by the IBEW retirement and Fidelity accounts (and such other funds held in the Lukins & Annis, P.S. IOLTA Trust Account in the event any portion of the settlement amount remained unsatisfied after payment from the IBEW retirement and Fidelity accounts;

2. Plaintiff shall retain the 11 gold coins in her possession;

3. Plaintiff shall receive possession and clear title to the Harley Davidson Motorcycle belonging to the Estate of Robert Neidigh, which is in the possession of Defendant.

4. Plaintiff shall receive family pictures or photo albums that remain in existence;

5. Plaintiff shall receive one or more of the 13 firearms belonging to the Estate of Robert Neidigh;

6. Defendant shall receive possession of and clear title to the Real Property owned by The Neidigh Trust, dated April 21, 2010, Roxanne Slaugh, trustee, generally located at 10620 N. Reed Road, Hayden, Kootenai County, Idaho;

7. Defendant shall receive possession of and clear title to the Real Property owned by The Neidigh Trust, dated April 21, 2010, Roxanne Slaugh,

> trustee, generally located at 5543 37th Avenue, Sacramento, Sacramento, County, California;
>
> 8. Defendant shall receive possession of and clear title to the Real Property owned by The Neidigh Trust, dated April 21, 2010, Roxanne Slaugh, trustee, generally located at 4385 Wabasso Lane, Garden Valley, El Dorado County, California;
>
> 9. Defendant shall receive all assets of the Estate of Robert Neidigh not otherwise described as belonging to Plaintiff in this Judgment, to include but not be limited to:
>
>     a. The balance of the bank account(s) at El Dorado Savings Bank as of May 3, 2017, including any rent proceeds collected in relation to the three above-referenced properties as of May 3, 2017 (less any management fees incurred).
>
>     b. The proceeds of the sale of a certain Ford truck in the amount of approximately $8,500.00; and
>
>     c. A Toyota Camry automobile.
>
> 10. Each party shall take all necessary steps, in good faith and cooperation, to accomplish the transfers in ownership (including deeds and titles) needed to effectuate the terms of the Judgment;
>
> 11. Plaintiff and Defendant, and their counsel, shall execute and sign a Stipulation for Order of Dismissal, with Prejudice, as to three of the four non-probate cases, with each party to bear her or its own costs and fees;
>
> 12. Notwithstanding the settlement and release as to disputed claims in the probate case, it may be kept open to permit the completion of such tasks and duties that the personal representative must undertake to effectuate the terms of the Judgment and other matters needed to finish the administration of the estate; and
>
> 13. Each party shall pay her or its own attorneys' fees and costs.

*See* J. (Docket No. 97).

At this stage, there was a settlement agreement, two clarifications of the settlement agreement's terms, and the cementing of the settlement terms into a Judgment. Two weeks later, Defendant filed the pending Motion for Enforcement of Judgment and Sanctions. There, she said that she "must again seek the assistance of the Court because [Plaintiff's counsel] refuses to

**MEMORANDUM DECISION AND ORDER - 4**

even communicate on the issues necessary to carry out the Court's Judgment." Def.'s Mot. for Enforcement of J. & Sanctions, p. 1 (Docket No. 98). Specifically, Defendant said that Plaintiff's counsel would not communicate regarding these steps which the Judgment required: (1) Plaintiff vacating a previously-entered summary judgment in the satellite probate case in Idaho state court; (2) Plaintiff paying Defendant the rent proceeds (less any management fees) from the California properties identified within the Judgment, including rent proceeds after May 3, 2017; and (3) Plaintiff not withholding any federal tax from the IBEW retirement account and, thus, preventing Plaintiff from receiving *more than* the settled-upon $136,000.00 funded from both the IBEW retirement and Fidelity accounts. *See generally id.* Defendant further contends that Plaintiff's counsel's failure to take action to implement these steps or to communicate and cooperate with Defendant's counsel to resolve these issues, amounts to bad faith and should be sanctioned. *See id.*

From the other side of the divide, Plaintiff contended that she "has performed each and every step required by this Court's Judgment" and that, instead, it is Defendant and her attorney who have "steadfastly" refused to perform the Judgement's mandate in good faith. *See generally* Pl.'s Resp. to Mot. for Enforcement of J. & Cross-Mot. for Same (Docket No. 107). Plaintiff therefore also moves to enforce the Judgment concerning the same issues raised by Plaintiff, while additionally arguing that Defendant must (1) execute the required stipulations for dismissal of the four related legal actions, and (2) coordinate the required transfer of the above-referenced Harley Davidson Motorcycle, family pictures/photo albums, and the remaining firearms. *See id.* Similarly, Plaintiff argues that Defendant's counsel should be sanctioned for his own obstreperous conduct. *See id.*

**MEMORANDUM DECISION AND ORDER - 5**

# DISCUSSION[3]

A. **Previously-Entered Summary Judgment in State Probate Case**

In October 2017, Idaho First Judicial District Magistrate Judge Van Valin granted Plaintiff's motion for summary judgment in the state probate case. Defendant now seeks to have that order vacated before fully performing on the Judgment (at least to the extent of dismissing the state probate case), claiming that the May 3, 2017 settlement agreement in this action resolved all pending actions (including the state probate case), thus mooting Plaintiff's then-pending motion for summary judgment (originally filed in October 2016), as well as Judge Van Valin's post-settlement order granting the motion. *See, e.g.*, Def.'s Mot. for Enforcement of J. & Sanctions, p. 3 (Docket No. 98) ("The first request is that the Summary Judgment should be vacated as it was granted after the parties, in the words of [Plaintiff's counsel], waived all claims between the parties. The probate case cannot be dismissed and leave the Judgment outstanding."). These arguments are without merit.

To the extent Defendant characterizes the fact that summary judgment was entered in the state probate case as somehow reflective of Plaintiff's (or her counsel's) disingenuousness, she is mistaken. Plaintiff's motion for summary judgment preceded the settlement agreement in this action, but was actually noticed for hearing and ruled upon (after the settlement agreement) because Defendant repeatedly challenged the settlement agreement's terms (via her Motion to Enforce Settlement Agreement and, later, Request for Clarification) and, likewise, never even began performing under its terms. *See* Pl.'s Resp. to Mot. for Enforcement of J. & Cross-Mot. for Same, p. 10 (Docket No. 107) ("[B]ased upon the Defendant's and her attorney's actions, in continuing to file motions for clarification and enforcement, it was uncertain whether or not she

---

[3] "A district court retains jurisdiction to enforce its judgments." *Hook v. Ariz., Dep't of Corr.*, 972 F.2d 1012, 1014 (9th Cir. 1992).

would ever perform under the settlement agreement. It was especially uncertain whether she would ever perform the settlement agreement, if the ruling and the outcome of her motions for enforcement went against her."). There is no space for Defendant to argue in this setting where her own actions created the necessity for Plaintiff to continue to litigate the state court probate case, that what transpired in the meantime should be undone. It may well be that the landscape of the case has changed because of this Court's enforcement of the global settlement reached between the parties, but that does not provide any basis for, nor does this Court have any authority, to rewrite the history of the state court case or to prescribe the future course of that case, except insofar as this Court has ordered the parties to implement their settlement agreement. In other words, the parties have agreed to dismiss the other lawsuits, and they are to be dismissed without further delay, in whatever form they now exist.

With all of this in mind, on this point, Defendant's Motion is denied and Plaintiff's Motion is granted.

**B.      Rent Proceeds After May 3, 2017**

The Judgment requires that Defendant receive possession of and clear title to certain real property, the balance of the El Dorado Savings Bank as of May 3, 2017, and any rent proceeds collected from the properties (less any management fees incurred) "as of May 3, 2017." J., pp. 3-5 (Docket No. 97). Plaintiff has already transferred and conveyed the identified real property to Defendant and paid Defendant the full amount of its El Dorado Savings Bank account as of May 3, 2017; however, she has retained the rent proceeds collected from these properties since May 3, 2017. Defendant argues that she is entitled to these proceeds under the Judgment; Plaintiff disagrees. Defendant is correct, but with a caveat.

Plaintiff argues that, according to the Judgment, Defendant is only entitled to the rent proceeds from the involved properties up until May 3, 2017, but not the rent proceeds after that

**MEMORANDUM DECISION AND ORDER - 7**

date. *See* Pl.'s Resp. to Mot. for Enforcement of J. & Cross-Mot. for Same, p. 25 (Docket No. 107) ("Per the Judgment it is evident that Defendant is to receive the rents **as of May 3, 2017**. The Judgment does not provide that Defendant is to receive rents less management fees incurred after May 3, 2017 to the date of the Judgment.") (emphasis in original). Plaintiff's position is understandable and not technically incorrect when understanding that Plaintiff paid Defendant the balance of the El Dorado Savings Bank account (which contained the rent proceeds) as of May 3, 2017 – arguably what the Judgment required. But this interpretation ignores a more logical reading of the Judgment, requiring that rent proceeds be paid to Defendant even after May 3, 2017.

Setting aside the incongruity created by Plaintiff's argument that she is entitled to rent proceeds from properties properly belonging to Defendant, Plaintiff's interpretation of the Judgment conflicts with the Court's November 20, 2017 Order concerning Defendant's Request for Clarification, which stated:

> The El Dorado account belongs to Defendant and, accordingly, Defendant is entitled to the El Dorado account balance as of May 3, 2017 (the date the parties informally resolved the instant action with Judge Dale). *Relatedly, all rent proceeds collected from the properties that Defendant is understood to own following the May 3, 2017 settlement agreement (less any management fees incurred) belong to Defendant*. Defendant's Request for Clarification is therefore granted in this respect.

11/30/17 Order, p. 4 (Docket No. 86) (internal citations omitted, emphasis added). Therefore, it is clear that Defendant, not Plaintiff, is entitled to the rent proceeds (less any management fees incurred) from the properties she now indisputably owns. Additionally, this interpretation aligns with the Judgment's directive that Defendant "shall receive all assets of the Estate of Robert Neidigh not otherwise described as belonging to Plaintiff . . . ." J., p. 4 (Docket No. 97). Nowhere does the Judgment establish Plaintiff's claim to rent proceeds from the properties that Defendant owns.

**MEMORANDUM DECISION AND ORDER - 8**

Perhaps the Judgment itself could have been more precise on this issue, but the Court anticipated that the parties would implement the requirements of the Judgement. Regardless, the Judgment in the context of the Court's earlier Orders makes more than clear that Defendant is entitled to the rent proceeds (less management fees incurred) from the properties she owns, including the rent proceeds after May 3, 2017. In this respect, Defendant's Motion is granted and Plaintiff's Motion is denied.

However, this conclusion does not justify Defendant's apparent efforts to lock/freeze Plaintiff out of the El Dorado Savings Bank account. *See* Pl.'s Resp. to Mot. for Enforcement of J. & Cross-Mot. for Same, pp. 2-3, n.1 (Docket No. 107) (noting that Defendant's counsel ordered that account be "frozen" so that Plaintiff could no longer have access to any remaining funds and could no longer have access to safe deposit box belonging to her and her late father). The El Dorado Savings Bank account should never have been frozen. Plaintiff's Motion is granted in this alternate respect.

**C.     Withholdings**

The issue of any tax consequences that might follow from any distribution from the IBEW retirement and Fidelity accounts as needed to satisfy the $136,000 payment to Plaintiff (as dictated by the Judgment) continues to generate the most conflict between the parties. Even though such tax consequences are inchoate at the moment (and potentially there may be no tax liability at all), the parties still continue to resist coming either to an agreement as to how to implement the Court's Judgment on this part of the settlement or, and perhaps most disappointingly, to agree upon some procedure to accomplish the end goal that would include some compromise about how it ought to be done.

For example, addressing Defendant's Motion to Enforce Settlement Agreement, the Court previously stated:

**MEMORANDUM DECISION AND ORDER - 9**

As in any contractual setting, the accounting for taxable events and/or withholdings may impose contingent liabilities to be "paid" by whoever has such liability (or other obligation) under the tax laws. Sometimes agreements are structured in advance to anticipate such circumstances, to the extent that such details can properly be organized to avoid tax liability instead of evading tax liability. Otherwise, as with any other contract, if there is a responsibility to pay such taxes because of some result of a settlement agreement, then a party to a settlement agreement who has that responsibility ignores it at their peril. With this in mind, the Court is careful not to order matters that are properly dictated by tax law, and the parties here who have reached a settlement agreement do not have the right to insist upon such a reassembling of their settlement agreement. Nor, for that matter, should the Court impose a certain course of conduct upon such matter when doing so may inadvertently and inappropriately purport to require something different than what tax law requires.

Accordingly, the Court simply determines that the settlement agreement requires that Plaintiff receive $136,000, with the IBEW retirement and Fidelity accounts going toward that amount. *The corresponding tax implications involved in using these accounts to help finance the agreed-upon $136,000, if any, are not resolved here; tax law will dictate how such matters ware to be handled moving forward.*

To illustrate, in part, the fact that the entity holding a particular account (here, for example, the IBEW or Fidelity accounts) may withhold for tax purposes a certain amount from an account upon a distribution from that account *is not necessarily the same as a tax liability for the holder of the account. It is a withholding.* Whether the holder of the account has the right to have some return of that amount directly, or in the form of a tax refund, or have it applied against some collective tax liability – such as an estate income tax return – are separate issues. Similarly, whether the ultimate recipient of such funds (if that person is different than the holder of the account) has a tax liability is also a separate issue.

Defendant's Motion to Enforce Settlement Agreement is therefore granted to this extent only; *to be clear, it is denied insofar as Defendant requests that (1) Plaintiff either take something less than $136,000 (as a result of taxes/withholding applied to any distribution from the IBEW retirement and Fidelity accounts), or (2) an order be entered obligating Plaintiff to account for any taxable events related to any distributions from these accounts. . . . .*

A settlement agreement exists between the parties and Plaintiff is to be paid $136,000, with the IBEW retirement and Fidelity accounts being applied toward that amount. In this respect, the Motion is GRANTED. *To the extent Defendant requests that Plaintiff either take less than $136,000 and/or be ordered to account for any taxable events related to any distributions from these accounts, that request is rejected. In this respect, the Motion is DENIED.*

9/28/17 MDO, p. 10-11 & p. 10, n.2 (Docket No. 78) (internal citations omitted, italics added, capitalization in original).

After this decision was entered, the Court then made a further ruling in dealing with Defendant's Request for Clarification:

> The parties reached a settlement agreement. That agreement required that Plaintiff receive $136,000 from Defendant, with the IBEW retirement and Fidelity accounts going toward that amount. It is true that the tax consequences (if any) in utilizing these accounts to help general the $136,000 were not resolved in the September 28, 2017 Memorandum Decision and Order (deferring to tax law); however, that is of no consequence because, under the parties' settlement agreement, Plaintiff is to receive $136,000 after withholding. *Said another way: Whichever party is responsible for any withholding (or other tax consequences) associated with liquidating and disbursing funds from the IBEW retirement and Fidelity accounts is to be resolved by tax law and "is what it is"; still, that responsibility (whatever it may be) is immaterial toward understanding that Plaintiff is to receive $136,000 from Defendant, independent of any such withholding/tax consequences.* Defendant's Request for Clarification is therefore denied in this respect.
>
> A settlement agreement exists between the parties and Plaintiff is to be paid $136,000, with the IBEW retirement and Fidelity accounts being applied toward that amount. Plaintiff is to receive $136,000 after any withholding. In this respect, Defendant's Request is DENIED.

11/30/17 Order, pp. 2-4 (Docket No. 86) (internal citations omitted, italics added, capitalization in original). Believing the taxation matter to be resolved via these two Orders, the subsequent Judgment was silent on the issue.

But the issue remains (as contentious as ever), with Defendant still concerned that, if Plaintiff is to receive $136,000 regardless of any withholding, and there *is* a withholding, Plaintiff stands to recover *more than* $136,000. *See* Def.'s Mot. for Enforcement of J. & Sanctions, p. 5 (Docket No. 98) ("It can only be assumed that with the present Judgment, [Plaintiff's counsel] will submit it to the retirement accounts and then allow the retirement to withhold taxes which she would hope that her client can claim when she pays her taxes. By doing this, [Plaintiff] would receive the $136,000, plus the 20% withholding . . . of $27,200,

meaning that [Plaintiff] would receive a total of $163,[2]00, far more than what it was agreed she would receive."). To prevent this, and still abide by the Judgment's terms, Defendant suggests that Plaintiff specifically indicate that no federal tax be withheld. *See id.*[4] Plaintiff disagrees, pointing to the Court's previous Orders and arguing in no uncertain terms that she is to receive $136,000 notwithstanding/after any withholding. *See* Pl.'s Resp. to Mot. for Enforcement of J. & Cross-Mot. for Same, pp. 25-29 (Docket No. 107).

The parties' latest go-round brings into better focus the complexity of the dispute – likely complicated by the ambiguity surrounding the Court's previous use of the term "withholding" when discussing tax liabilities. *But see* 9/28/17 MDO, p. 10, n.2 (Docket No. 78) (distinguishing between tax liability and withholding). To be clear, at all times, the Court's intention has been to ensure that Plaintiff receive the agreed-upon $136,000 such that, whatever tax liabilities or penalties (as distinguished from withheld taxes (*see infra*)) apply when liquidating the IBEW retirement and Fidelity accounts to fund the settlement amount, they not be borne by Plaintiff, lest she receive something less than $136,000. This is what the Court's Orders attempted to consistently explain.

But the opposite is also true. That is, as important it is for Plaintiff not to receive less than $136,000, it is just as important to Defendant that Plaintiff not receive more than $136,000. This could happen, as Defendant points out, if taxes are withheld (as distinguished from a tax

---

[4] Defendant's briefing and arguments to the Court have not been consistent on these details. *Compare* Def.'s Mem. in Supp. of Mot. to Enforce, p. 6 (Docket No. 66, Att. 1) ("The new term [Plaintiff] wants to impose stems from her apparent realization after the fact that withdrawing funds from the IBEW and Fidelity accounts would be a taxable event. *Both of the administrators require that 20% of the distribution be withheld as a deposit for that purpose . . . .* [Plaintiff] insists that [Defendant] be responsible for the 20% withheld and any taxes ultimately due so that she gets her $136,000 immediately.") (emphasis added), *with* Def.'s Reply in Supp. of Mot. for Enforcement of J. & Sanctions, p. 7 (Docket No. 111) ("All [Plaintiff] has to do is submit a form to the pension fund and there is no withholding. *There is no requirement that either pension fund withhold any of the funds due [Plaintiff].*") (emphasis added).

**MEMORANDUM DECISION AND ORDER - 12**

liability/penalty (*see supra*)) when distributing funds from the IBEW retirement and Fidelity accounts, but Plaintiff still receives a separate $136,000 distribution. Because the withheld taxes may later be treated as a payment toward Plaintiff's tax liability (or refunded), Plaintiff would then be receiving something more than $136,000 – the $136,000 itself *and* the amount in withheld taxes. If it is unacceptable for Plaintiff to receive less than $136,000, it is equally unacceptable for her to receive more than $136,000. Equity demands no less.

The question, then, is who accounts for the expense (assuming there even is one) in transforming the IBEW retirement and Fidelity accounts into Plaintiff's $136,000 payment? As expressed above, Plaintiff is to receive $136,000 – no more, no less. If there are unrecoverable costs, expenses, penalties, and/or taxes (or similar fees) associated with making the $136,000 payment to Plaintiff from the IBEW retirement and Fidelity accounts, *they are not Plaintiff's responsibility* – this is what the Court meant when saying that "Plaintiff is to receive $136,000 after any withholding," even if, in hindsight, the directive generated more questions than answers. However, if taxes are withheld *for the benefit of* Plaintiff (as the recipient of funds from the IBEW retirement and Fidelity accounts), *those withheld taxes are to be accounted for as a component of Plaintiff's $136,000 payment*.

It is unclear whether the parties understood this distinction yet reflexively disagreed with one another, or if their headstrong positions simply represented (battle) ships passing in the night. Regardless, the specific issue cannot be put to rest here until it is understood whether taxes will be withheld from any distribution from the IBEW retirement and Fidelity accounts – a question to be answered by the parties (if not, simply, Plaintiff herself) and/or tax law.[5] Until

---

[5] On this point, the Court notes that each party has indicated a preference that no taxes be withheld, presumably agreeing that Plaintiff would then be receiving the full $136,000 payment. *Compare* Def.'s Mot. for Enforcement of J. & Sanctions, p. 5 (Docket No. 98) ("In order to make sure that the retirements do not withhold anything, a suggestion was made that [Plaintiff]

then, neither party is granted the specific relief each of them seeks. Both Plaintiff's and Defendant's Motions are accordingly denied in this respect. Ultimately, if the denouement of this particular disagreement between the parties results in Plaintiff receiving more than $136,000.00, she will owe that money back to Defendant. Similarly, if Defendant is seeking to shift what would otherwise be her tax responsibility if the accounts were liquidated in whole or in part, while under her control, in order to accomplish a transfer to Plaintiff of $136,000.00 that would ultimately, at a later date, be less than that amount because of a tax liability that had been shifted from Defendant to Plaintiff, then Plaintiff would have a claim in equity back against Defendant for whatever that amount might be.

Regardless of these details, the Court does not condone and is concerned by what Plaintiff has represented to be the Defendant's counsel's unilateral contact with administrators of the accounts to demand that funds not be released to Plaintiff. *See, e.g.*, Pl.'s Resp. to Mot. for Enforcement of J. & Cross-Mot. for Same, pp. 19 & 29-30 (Docket No. 107). The parties, and their counsel, are to cooperate in accomplishing the steps that the Court has outlined in the Judgment. Unilateral actions of the sort described above are counterproductive at a minimum, and arguably obstructive. Accordingly, the Court will separately grant Plaintiff's Motion requiring that any communication to the accounts about assignments, transfers, liquidations or other actions be made with a reference to the fact of this Court's Judgment and to reflect the

---

submit a form entitled "W-4P – Withholding Certificate for Pension or Annuity Payments" or the "Tax Withholding Election Form for Individual Retirement Accounts," . . . which then [Plaintiff] can check the box that there shall be no federal tax withheld."), *with* Pl.'s Proposed Stip. and Order for Payment of Pension Account Funds (Docket No. 92) ("Plaintiff . . . and Defendant . . . agree that Robert Neidigh's Sacramento Area Electrical Worker's Pension and Profit Sharing Plan . . . shall be paid in full and without any withholdings to Plaintiff . . . ."). The Court will not order that no taxes be withheld, but highlights this apparent circumstance as a possible point of agreement and, if so, a possible pathway toward resolving this heretofore nettlesome issue.

**MEMORANDUM DECISION AND ORDER - 14**

agreement of both parties that the requested action is consistent with and intended to comply with the requirements of the Judgment, and be signed by counsel for both parties.

**D.        Harley Davidson Motorcycle, Family Photographs/Photo Albums, and Firearms**

In addition to the matters identified above, Plaintiff also argues that Defendant has violated the terms of the Judgment by failing "to indicate when the Harley Davidson Motorcycle will be ready for transport/pick up by a third-party, sign the necessary transfer document, and indicate when Plaintiff will be able to pick up the family photo albums and photographs and remaining firearms." *Id*. at p. 29.  Defendant does not dispute that these items have not been turned over to Plaintiff, but argues that any failure to do so is Plaintiff's fault, not Defendant's. *See* Pl.'s Resp. to Cross-Mot. for Enforcement of J. & Sanctions, p. 7 (Docket No. 110) ("[Plaintiff's counsel] then contends that [Defendant] has refused to transfer the motorcycle.  A request is made for [Plaintiff's counsel] to provide the date and communication that the physical possession was requested, and [Defendant] refused to allow the motorcycle to be picked up. [Defendant] is not on title to the motorcycle, so asking [Defendant] to transfer title to the motorcycle what would be in the name of [Plaintiff] is of no value.  Again, a request is made for [Plaintiff's counsel] to provide any written demand for delivery of the photo albums.").

Though it shouldn't be necessary, the parties are reminded of their obligation "to take all necessary steps, in good faith and cooperation, to accomplish the transfers in ownership (including deeds and titles) needed to effectuate the terms of th[e] Judgment."  J., p. 5 (Docket No. 97).  To this end, the parties shall immediately coordinate a mutually-convenient time for Plaintiff (via a third-party) to take possession of the Harley Davidson Motorcycle.  *See id*. at p. 3. The fact that Defendant's name is not on the motorcycle's title does not acquit Defendant of her responsibility to assist Plaintiff in transferring title to her, depending on what may be required to do so in the involved state.  Moreover, Defendant should understand Plaintiff's briefing to

**MEMORANDUM DECISION AND ORDER - 15**

represent a clear demand for the delivery of the pictures/photo albums and firearms. Given this, and consistent with the Judgment, Defendant shall immediately send (1) any and all family pictures or photo albums that remain in existence, and (2) one or more of the 13 firearms belonging to the Estate of Robert Neidigh (in Defendant's discretion) to Plaintiff's counsel. *See id*. In these respects, Plaintiff's Motion is granted.

E.  **Sanctions**

Defendant requests that sanctions be imposed against Plaintiff's counsel for her alleged bad faith. *See generally* Def.'s Mot. for Enforcement of J. & Sanctions (Docket No. 98). After reviewing the record, the Court is convinced that Plaintiff's counsel's has not acted in bad faith. Each position taken by Plaintiff's counsel is either legally warranted or, at least, justified under one possible reading of the Judgment. *See supra*. It therefore cannot be said that the positions taken by Plaintiff's counsel to this point in the litigation are in bad faith. Defendant's Motion is denied in this respect.

Defendant's counsel will also not be sanctioned, notwithstanding Plaintiff's identical request. However, both in the manner of disagreement over the terms of the settlement and in the regrettable contretemps that has followed, at nearly every turn, the Court is left with the impression that Defendant's counsel has worked harder to stymie than to solve the action's resolution. Still, some of the positions taken by Defendant's counsel's on behalf of his client have a legitimate beginning point, even if they could have been presented in a more constructive manner. Therefore, at this time, any imposition of sanctions against Defendant's counsel is premature. Plaintiff's Motion is denied in this respect.

**ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that (1) Defendant's Motion for Enforcement of Judgment and Sanctions (Docket No. 98), and (2) Plaintiff's Cross-Motion for

Enforcement of Judgment and Sanctions (Docket No. 107) are each GRANTED, in part, and DENIED, in part, as follows:

1. The previously-entered summary judgment in the state probate case need not be vacated. In this respect, Defendant's Motion is DENIED and Plaintiff's Motion is GRANTED. On or before **July 27, 2018**, the parties shall execute the required stipulations of dismissal with respect to the cases identified in paragraph 11 of the Judgment. And, because the Court understands that the state probate case no longer needs to remain open to permit the completion of such tasks and duties that the personal representative must undertake to effectuate the terms of the Judgment and other matters needed to finish the administration of the estate, on or before **July 27, 2018**, the parties shall also execute a stipulation of dismissal with respect to the state probate case identified in paragraph 12 of the Judgment. In these alternate respects, Plaintiff's Motion is GRANTED.

2. Defendant is entitled to the rent proceeds (less management fees incurred) from the properties she owns, including the rent proceeds after May 3, 2017. In this respect, Defendant's Motion is GRANTED and Plaintiff's Motion is DENIED. Plaintiff shall account for these rent proceeds on or before **July 27, 2018**. However, the El Dorado Savings Bank account should never have been frozen and, on or before **July 18, 2018**, Defendant shall take the necessary steps to un-freeze the El Dorado Savings Bank account to permit Plaintiff's access to the same. In this alternate respect, Plaintiff's Motion is GRANTED.

3. If there are unrecoverable costs, expenses, penalties, and/or taxes (or similar fees) associated with making the $136,000 payment to Plaintiff from the IBEW retirement and Fidelity accounts, they are not Plaintiff's responsibility and Plaintiff is entitled to recover $136,000 after any such fees are accounted for. However, if taxes are withheld for the benefit of Plaintiff (as the recipient of funds from the IBEW retirement and Fidelity accounts), those withheld taxes are

**MEMORANDUM DECISION AND ORDER - 17**

to be accounted for as a component of Plaintiff's $136,000 payment.  On or before **July 27, 2018**, Plaintiff shall be paid the equivalent of $136,000 from the IBEW retirement and Fidelity accounts pursuant to the Judgment.[6]  Defendant's Motion and Plaintiff's Motion are each DENIED in this respect pursuant to the rationale contained within this Memorandum Decision and Order.   Additionally, any communication to the accounts about assignments, transfers, liquidations or other actions are to be made with a reference to the fact of this Court's Judgment and to reflect the agreement of both parties that the requested action is consistent with and intended to comply with the requirements of the Judgment, and be signed by counsel for both parties.  In this alternate respect, Plaintiff's Motion is GRANTED.

   4.  On or before **July 16, 2018**, the parties shall coordinate a mutually-convenient time (to take place by **July 27, 2018**) for Plaintiff (via a third-party) to take possession of the Harley Davidson Motorcycle.  *See id*. at p. 3.  Additionally, on or before **July 27, 2018**, Defendant shall deliver (1) any and all family pictures or photo albums that remain in existence, and (2) one or more of the 13 firearms belonging to the Estate of Robert Neidigh (in Defendant's discretion) to Plaintiff's counsel.  *See id*.  In these respects, Plaintiff's Motion is GRANTED.

   5.  Neither party's counsel will be sanctioned at this time.  Defendant's Motion and Plaintiff's Motion is DENIED in this respect.  **However, if the terms identified above are not completed, the Court will consider the issuance of a show cause order to assess whether imposition of sanctions, to include the possibility of contempt, is justified**.

---

[6] Defendant asks that "[t]he amount of the rents that [Plaintiff] has received since the settlement shall be offset against the $136,000" and that "[i]f the offset is not ordered, there is no feasible way for [Defendant] to recover what she is entitled to receive."  Def.'s Mot. for Enforcement of J. & Sanctions, p. 4 (Docket No. 98).  Though a possibly sensible way of accounting for payments made back-and-forth, such an offset is neither required by the Judgment, nor necessary to ensure that Defendant receives what she is entitled to.  The parties are free to negotiate how any payments are to be made to satisfy the Judgment; until then (or in the event an agreement cannot be reached), the Court will not order any offset to take place.

**MEMORANDUM DECISION AND ORDER - 18**

6. The parties shall submit (preferably joint, but not required) 2 status reports via CM/ECF – one on or before **July 20, 2018**, the other on or before **July 31, 2018**. Each status report shall address the parties' progress toward satisfying the deadlines included here. Following each report, the Court will consider whether to hold an on-the-record status conference, request any briefing, or issue an order to show cause why sanctions should not be imposed.

DATED: July 9, 2018

_____
Ronald E. Bush
Chief U.S. Magistrate Judge